**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE HUNT and MALIKA JONES, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>SUNNY DELIGHT BEVERAGES CO., a Florida Corporation, GRENADIER LLC, a Missouri Limited Liability Company,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

# **TABLE OF CONTENTS**

I.     JURISDICTION AND VENUE................................................................1

II.   NATURE OF THE ACTION.................................................................2

III.  PARTIES..............................................................................................4

IV.  FACTUAL ALLEGATIONS.................................................................5

     A.    Defendant's Product Labels Deceive Consumers and Violate the Law.................................................................................................5

     B.    Defendant's Products Are Artificially-Flavored Sugar-Water Masquerading as Fruit Juice.............................................................10

     C.    Competitors Label Their Products Lawfully. ...................................16

     D.    Plaintiffs' Purchases of the Misbranded Products ...........................17

V.    DELAYED DISCOVERY ....................................................................19

VI.  THE PRODUCTS..............................................................................20

VII. CLASS ACTION ALLEGATIONS ......................................................21

VIII. CAUSES OF ACTION ........................................................................24

     CLAIM FOR FRAUD BY OMISSION .......................................................24

     CLAIM FOR NEGLIGENT MISREPRESENTATION..............................25

     CLAIM FOR VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT ........................................................................................................26

     CLAIM FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW (UNLAWFUL PRONG) ....................................................................27

     CLAIM FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW (UNFAIR PRONG) ........................................................................28

     CLAIM FOR VIOLATIONS OF THE FALSE ADVERTISING LAW......31

     CLAIM FOR BREACH OF EXPRESS WARRANTIES...........................32

     CLAIM FOR BREACH OF IMPLIED WARRANTIES...........................33

IX.  PRAYER FOR RELIEF.......................................................................35

X.    JURY DEMAND ................................................................................36

i

Plaintiffs Michele Hunt and Malika Jones ("Plaintiffs"), on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby bring this action against Sunny Delight Beverages Co. ("Defendant") and Grenadier LLC ("Grenadier"), and upon information and belief and investigation of counsel, allege as follows:

## I.   <u>JURISDICTION AND VENUE</u>

1.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The Defendant is a citizen of a state different from that of the Plaintiffs, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2.     This Court has both general and specific personal jurisdiction over the Defendant Sunny Delight Beverages Co. and Defendant Grenadier LLC.

3.     The Court has personal jurisdiction over Defendants because, through the conduct alleged herein, both companies have affirmatively established and maintained contacts with the State of California.

4.     This Court has specific personal jurisdiction arising from Defendants' decision to advertise and sell the Products in California. Defendants have sufficient minimum contacts with this State and sufficiently avail themselves of the markets of this State through the manufacture, promotion, sales, and marketing of the Products to consumers within the State to render the exercise of jurisdiction by this Court reasonable.

5.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this venue, including specifically the relevant transactions between Plaintiffs and the Defendant, and, in the alternative, the Defendant is subject to the Court's personal jurisdiction with respect to this action.

///

///

1

## II.   NATURE OF THE ACTION

6.     This is a consumer class action lawsuit for violations of California consumer protection laws.

7.     Defendant Sunny Delight manufactures, distributes, advertises, markets, and sells a variety of fruit-flavored beverage products.

8.     Defendants label and advertise the Products with various natural fruit names and images including, for example, "Orange Strawberry," "Orange Pineapple," "Orange Passionfruit," "Strawberry Guava," and "Watermelon."  The Product labels display the fruit name or names and pictured representations of each of the namesake natural fruits.

9.     None of these Products contain all the fruit juices represented by the names and pictures on the label. All are flavored with artificial flavors to counterfeit the flavors of fruits named and advertised on the labels.

10.    Figure 1, below, is a true and accurate representation of two examples of Defendant's products and their front labels.

Figure 1: Product Front Labels

 

2

11.    Under California law, any product that is advertised as containing a natural fruit or fruit flavor, that does not in fact contain any of that fruit or fruit juice, must clearly disclose this fact on the front label.

12.    Defendant's "Orange Strawberry" Product does not contain any strawberries or strawberry juice.

13.    The "Orange Pineapple" Product contains neither pineapple nor pineapple juice.

14.    The "Orange Passionfruit" Product contains neither passionfruit nor passionfruit juice.

15.    The "Blue Raspberry" Product contains no raspberries or raspberry juice.

16.    The "Fruit Punch" Product, which advertises cherries and pears on the labeling, contains no cherries, cherry juice, pears, or pear juice.

17.    The "Strawberry Guava" Product contains no strawberries or strawberry juice – or guavas or guava juice, for that matter.

18.    The "Cherry Limeade" Product contains no cherries or cherry juice.

19.    The "Watermelon" Product contains neither watermelon nor watermelon juice.

20.    The fruits that each Product purportedly is made from are advertised conspicuously on the labels.

21.    Conspicuously absent, however, from every label is the legally-required disclosure informing consumers that the Products are artificially flavored and do not contain all – or in some cases, <u>any</u> of – the fruits or juices shown on the label.

22.    All of the Products fail to disclose on the front label, as required by law, that they are artificially flavored.

23.    Because the Products' labels conceal the fact that the Products are made with artificial flavors, the labeling is false and misleading and the Products are misbranded under California law.

///

*Michele Hunt, et al. v. Sunny Delight Beverages, Co.*
CLASS ACTION COMPLAINT

24.    Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a healthy, all-natural product instead of a product that is actually artificially flavored.

25.    Defendant's Product labeling constitutes food fraud under California law and violates California false advertising, consumer protection, and unfair competition laws.

26.    Plaintiffs, who purchased the Products and relied on and were deceived by Defendants' unlawful conduct, bring this action on their own behalf and on behalf of consumers to remedy Defendants' unlawful acts.

27.    On behalf of the Class as defined herein, Plaintiffs seek an order compelling Defendants to, *inter alia*: (1) cease packaging, distributing, advertising and selling the Products in violation of U.S. FDA regulations and state consumer protection law; (2) re-label or recall all existing deceptively packaged Products; (3) inform consumers regarding the Products' misbranding; (4) award Plaintiff and the other Class-members restitution, actual damages, and punitive damages; and (5) pay all costs of suit, expenses, and reasonable attorney fees.

## III.    PARTIES

28.    Defendant Sunny Delight Beverages Co. ("Sunny Delight" or "Defendant") is a Florida corporation with its principal place of business at 10300 Alliance Road, Suite 500, Cincinnati, Ohio.

29.    Sunny Delight is registered with the California Secretary of State to do business in California as entity number C0674126.

30.    Sunny Delight manufactures, advertises, markets, distributes, and sells the Products in California and throughout the United States.   Sunny Delight has a manufacturing plant in California located at 1230 North Tustin Avenue, Anaheim, California.

31.    Defendant Grenadier LLC is and was the principal advertising agency responsible for the labeling and advertising of the Products throughout the proposed Class Period.

32.     Grenadier wrote or approved false and misleading labeling and advertising copy that facilitated the sale of the misbranded Products to consumers in California during the Class Period and is therefore jointly liable under California law with Defendant Sunny Delight.

33.     Grenadier is a Missouri Limited Liability Company with its principal place of business in Boulder, Colorado.  Grenadier is registered with the Colorado Secretary of State to do business in Colorado under entity number 20121422847.

34.     Plaintiff Michele Hunt is a resident and citizen of Los Angeles County, California, who purchased the Products multiple times in Los Angeles County for personal and household consumption.

35.     Plaintiff Malika Jones is a resident and citizen of Los Angeles County, California, who purchased the Products multiple times in Los Angeles County for personal and household consumption.

## IV.   FACTUAL ALLEGATIONS

### A.   Defendant's Product Labels Deceive Consumers and Violate the Law.

36.     Defendant Sunny Delight manufactures, distributes, advertises and sells a variety of fruit-flavored juice beverages under the brand name, "SunnyD" or "Sunny Delight" (the "Products").

37.     The Products' labels all mislead consumers and violate California and federal law.

38.     As shown in Figure 1, above, the "Orange Strawberry" flavor Product's label shows life-like pictorial representations of fresh, ripe, whole strawberries.

39.     The Product's name, "Orange Strawberry", along with these pictorial representations, informs the consumer by operation of California and federal law that the Product is made exclusively from and is flavored only with the named natural fruit juices.

40.     The "Orange Strawberry" Product, however, contains no actual strawberries or strawberry juice. It is flavored with "natural and artificial flavors" to mimic the flavor of strawberries.

41.     Defendant fails to disclose this on the Product's front label. This is a violation of California consumer protection law.

42.     All the other flavor-variety Products are similar:  all are flavored to resemble the named and pictured natural fruit(s), but do not contain any or all of the actual juices from the displayed fruits.

43.     All of the Products are flavored instead with "natural and artificial flavors" but fail to disclose this on the Products' front labels as required by law.

44.     All the Products' labels violate California law.

45.     Defendant admits in the Product ingredient lists that the Products contain natural and artificial flavors and 2% or less of concentrated juices. However, in no case do the Products' contents include all of the pictured natural fruits on the Product labels.

46.     Because the Products all contain artificial flavoring, federal and state law require all of these Products to include front-label disclosures to inform consumers.

47.     The Products disclose the artificial flavors only in fine print on the rear label, but deceptively omit the legally-required disclosures from the front labels consumers see.

48.     California law, incorporating and identically mirroring U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's front label accurately describe the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

49.     Under FDA regulations, a recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor."  21 C.F.R.  § 101.22.

50.     FDA regulations and California law require that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor." 21 C.F.R. § 101.22(i).

51.     "Orange   Strawberry,"   "Orange   Pineapple,"   "Orange   Passionfruit," "Watermelon," and the other fruit flavors advertised on the Products' front labels are primary recognizable flavors for the Products. These are therefore by law considered

6

characterizing flavors.

52.    If a product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. § 101.22(i)(3), (4).

53.    A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5(c).

54.    Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id*.

55.    The Products' labels do not include any of the required label statements.

56.    The Products' labels all violate California law.

57.    The Products also contain an ingredient identified as "malic acid."

58.    Malic acid, specifically the form of malic acid included in the Defendant's Products, is also an artificial flavor.

59.    The Product's label therefore violates California law in, at a minimum, two different ways.

60.    First, because the Product contains added flavoring ingredients that create, simulate and reinforce the Product's characterizing flavors, the front label is required by law to disclose the presence of those additional flavorings rather than misleadingly suggest that the Product's flavor is conferred only by the fruits shown and advertised. Cal. Health & Saf. Code § 109875 *et seq.*, (Sherman Law), incorporating 21 C.F.R. § 101.22.[1]

---

[1] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code § 109875 *et seq.*, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate an FDCA regulation

7

61.    Second, the required Product ingredient list violates federal and state law because it misleadingly identifies the malic acid constituent only as a generic "malic acid" instead of using the correct, specific, non-generic chemical name of the ingredient as required by food labeling regulations.  *See* 21 C.F.R. § 101.4(a)(1).

62.    FDA regulations provide that ingredients "shall be listed by common or usual name" and that "[t]he name of the ingredient shall be listed by a specific name and not a collective (generic) name." 21 C.F.R. § 101.4(a)(1) & (b).

63.    Because the Defendant uses a misleading and unlawful name for this ingredient, consumers have no chance to identify it as a synthetic chemical or to know that the Product is artificially flavored.

64.    There are two forms of malic acid: l-malic acid, which occurs naturally in various foods, and dl-malic acid, which does not occur naturally but is instead synthesized from petroleum products in chemical factories.  21 C.F.R. § 184.1069(a).

65.    The "malic acid" Defendant puts in the Products is not the natural flavoring material but is instead the synthetic industrial chemical dl-malic acid that is manufactured in chemical factories from petroleum feedstocks.

66.    This "malic acid" ingredient is not naturally occurring but is instead synthesized from benzene or butane—components of gasoline and lighter fluid, respectively—through an intermediate conversion to maleic anhydride, via a series of chemical reactions which involve highly toxic chemical precursors and chemical byproducts.

67.    California and federal law both define an artificial flavor as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat fish, poultry, eggs, dairy products, or fermentation products thereof."[2]

_____

necessarily therefore violates California's Sherman Law. *Id.* at § 110100. Regulatory citations in the text are to California's Sherman Law and reference the corresponding federal regulation for convenience.

[2] Cal. Health & Saf. Code § 109875; 21 C.F.R. § 101.22(a)(1).

68.    The dl-malic acid in Defendant's Products is derived from a petrochemical, not from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material. . . ."  The "malic acid" Defendant puts in the Products is therefore an artificial flavor under U.S. Federal and California law.

69.    Both the natural and unnatural forms of malic acid are considered GRAS (generally recognized as safe) for use as flavorings; the d-malic acid[3] form, however, has not been thoroughly studied for its health effects in human beings. Both forms confer a "tart and fruity" flavor to food products[4] and simulate the flavor of real fruit.

70.    Under federal and California state regulations, Defendant was required to place prominently on all the Products' front labels a notice sufficient to allow consumers to understand that the Products contained artificial flavorings.

71.    Defendant failed to do so, deceiving consumers and violating California law.

72.    Accordingly, Plaintiffs were unaware that the Products contained artificial flavoring and did not contain any or all of the advertised fruits or fruit juices when they purchased them.

73.    When purchasing the Products, the Plaintiffs were seeking products of particular qualities, that were flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.

74.    Plaintiffs are not alone in these purchasing preferences. As reported in Forbes Magazine, 88% of consumers polled recently indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to Baby Boomers—say they would pay more" for such products, specifically including foods with no artificial flavors.[5]

---

[3] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.
[4] The Chemical Company, *Malic Acid*, https://thechemco.com/chemical/malic-acid/; last visited Mar. 9, 2018.
[5] *Consumers Want Healthy Foods--And Will Pay More For Them*, FORBES MAGAZINE (Feb. 15, 2015), https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; last visited Mar. 9, 2018.

9

75.   California's Health & Safety Code states that "[a]ny food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact."  Cal. Health & Saf. Code § 110740.

76.   California law required Defendant to include on the Products' front labels a notice to alert California consumers that the Products are artificially flavored.

77.   Defendant failed to do so.

78.   Accordingly, Defendant's Products were misbranded and are illegal to distribute or sell in California. Cal. Health & Saf. Code § 110740; § 110760; § 110765.

79.   Plaintiffs lost money as a result of Defendant's conduct because they purchased a Product that contained undisclosed and undesirable artificial flavors at a price premium.

80.   John Compton, the CEO of a Fortune 50 competing beverage manufacturer, stated to investors at the Morgan Stanley Consumer & Retail Conference, "We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be all natural."

81.   Defendant's labeling and marketing of the Products reflects this knowledge of consumers' preferences for natural products—not by actually making the Products with natural ingredients, but by concealing the fact that the Products contain artificial flavors.

### B.   **Defendant's Products Are Artificially-Flavored Sugar-Water Masquerading as Fruit Juice.**

82.    Defendants label the Products with the names of real fruit and healthful-looking pictures of ripe fruits.

83.   In reality, the Products are almost entirely sugar-water, artificially flavored to resemble fruit juice.

84.   These Products are intended for and marketed to children.

85.   They pose a very real health threat to those children.

86.   The Products contain 2% or less concentrated fruit juice <u>in total</u> from <u>all of</u> the fruits shown on the labels.

87.     Instead of healthful fruit juices, the Products consist largely of water and sugar from high-fructose corn syrup, artificially flavored to resemble fruit juice.

88.     The Products contain large quantities of added sugar.

89.     Excessive sugar consumption correlates directly with serious chronic illnesses, beginning in childhood.

90.     Scientific studies from leading research institutions demonstrate that sugar is to blame for serious chronic diseases, including Type 2 diabetes, heart disease, and liver disease, as well as childhood obesity.

91.     Defendants advertise the Products as providing "100% Vitamin C."

92.     While it may technically be true that each serving of the Product has had enough synthetic vitamin C added to it to equate to the recommended daily allowance of that vitamin, the deleterious effects of the Product's added sugar actually interfere with the healthful effects of that vitamin in the body.

93.     The Products are therefore not in fact a good source of vitamin C because the amount of refined sugar in the Products, in the form of high-fructose corn syrup, depletes the body of vitamin C and blocks other vitamin and mineral absorption as well.

94.     Excess sugar consumption damages human cells and promotes nutrient deficiency.[6]

95.     Excess sugar consumption depletes vitamins and minerals, including those like vitamin C that are necessary for beneficial antioxidant health effects.

96.     Excess sugar consumption prevents antioxidant vitamins and minerals from working effectively in the body.

97.     Excess sugar consumption interferes with the body's metabolism of vitamins including vitamin C.

---

[6] J. DiNicolantonio, A. Berger; "Added sugars drive nutrient and energy deficit in obesity." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4975866/; last visited March 22, 2018.

*Michele Hunt, et al. v. Sunny Delight Beverages, Co.*
CLASS ACTION COMPLAINT

98.  Excess sugar consumption also depletes and blocks the absorption of vitamin D, calcium, magnesium, potassium, and chromium.

99.  Excess sugar consumption depletes thiamine, riboflavin, niacin, and cellular phosphate necessary for energy metabolism.

100.  Far from being a good source of vitamin C as the labeling misleadingly suggests, the Products contribute to the depletion of this and many other nutrients from the body.

101.  Defendants misleadingly label the Products as if they contain healthful fruit juices and supply healthful vitamins, when in fact they consist largely of sugar-water, the excess consumption of which interferes with the proper metabolism of those vitamins.

102.  Today, "across all age and sex groups, the vast majority of the U.S. population exceeds recommended intakes of . . . added sugars."[7]

103.  The majority of sugars in typical American diets are added to foods during processing, preparation, or at the table.[8]

104.  Defendant's Products contain high fructose corn syrup as the second named ingredient, as well as minuscule amounts of concentrated fruit juices, and sucralose.  High fructose corn syrup is a concentrated, inexpensive sugar sweetener made from corn starch.  Sucralose is an artificial sweetener produced by chlorination of sucrose.

105.  Despite substantial and compelling evidence that sugar is implicated in a host of serious diseases, Defendant maintains a policy and practice of packaging, labeling, advertising, and marketing high-sugar juice beverages to parents and children with pictorial representations of natural fruits in order to give purchasers the impression that

---

[7] U.S. Dep't of Agric. & U.S. Dep't of Health & Human Servs., "Scientific Report of the 2015 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Health and Human Services and the Secretary of Agriculture," at 26 (February 2015), available at https://health.gov/dietaryguidelines/2015-scientific-report/PDFs/Scientific-Report-of-the-2015-Dietary-Guidelines-Advisory-Committee.pdf.

[8] U.S. Dep't of Agric. & U.S. Dep't of Health & Human Servs., "Dietary Guidelines for Americans, 2010," at 27 (2010), available at http://www.health.gov/dietaryguidelines/dga2010/DietaryGuidelines2010.pdf.

they are buying a premium, all-natural, healthy product instead of a product that contains large amounts of added sugars and is artificially flavored.

106.   Defendants market the Products directly to health-conscious consumers who seek naturally flavored and healthy juice beverage products.

107.   Defendant's advertising boasts that each 8-oz serving of the Products contains "60 calories or fewer," and "100% Vitamin C."

108.   Figure 2, below, is a true and accurate representation of Defendant's website marketing claims regarding the "Orange Strawberry" Product:

<u>Figure 2: "Orange Strawberry" Product Website Claims</u>







109.   Furthermore, the front labels of the Products prominently claim near the life-like pictorial representations of natural fruits that the Products contain "100% Vitamin C" (*see* Figure 1).

110.   Defendants imply thereby that the Products are associated with natural ingredients and good health, even though the products are high in added sugar, specifically high fructose corn syrup and sucralose, which have both been shown to contribute to weight gain and diminished health.

111.   Defendant markets at least ten Products that currently contain 13-15 grams of sugar per 8-oz serving.

112.   There are 15 grams of sugar in one 8-oz serving of Defendant's "Orange Passionfruit" Product.

113.   Fifteen grams of sugar is nearly four teaspoons.

114.   Defendant also markets 16-oz serving size Products that contain 27-28 grams of sugar per serving, and consumers are likely to drink the whole 16-oz serving container.

115.   The amounts of refined sugar hidden in Defendant's Products, which appear to the reasonable consumer to be healthful fruit juice beverages, endanger consumers' health.

116.   Regular consumption of beverages containing this quantity of sugar contributes to excessive added sugar consumption and increased risk of chronic disease.

117.   Despite substantial and compelling evidence that sugar is implicated in a host of diseases that detrimentally affect health, Defendant maintains a policy and practice of advertising high-sugar juice beverages with labels including life-like pictures of natural fruits and health claims in order to confuse consumers and market their Product as a natural, healthful product with natural fruit ingredients so as to justify inflated prices.

118.   Plaintiffs purchased the Products under the impression that the Products contained natural fruit ingredients instead of artificially processed added sugars and sweeteners such as high fructose corn syrup and sucralose.

119.   Defendants continue to market the Products with as much as 15 grams of sugar per 8-oz serving.  Defendants actively label these high-sugar juice beverages with various pictures of whole fresh fruits and health claims that suggest the juice beverages are healthy and natural when they are not.  The Products' labels are deceptive because they are incompatible with the significant dangers of the excessive added sugar consumption to which these Products contribute.

120.   Defendant also markets specifically to parents and children by providing articles on their website about "Teaching Good Sportsmanship," claiming that "sharing a cooler full of ice-cold SunnyD with the other team is a relatively small gesture, but teaches a big lesson….Nothing says, 'we'll get you next time' like keeping the competition fueled with 100% Vitamin C!"

121.   Figure 3, below, are true and accurate representations of Defendant's website targeted marketing to parents and children:

Figure 3: Product Marketing Targeting Parents and Children



122.   The Products that are the subject of this Complaint and examples of Defendant's policy and practice of marketing high-sugar juice beverage products with misleading natural ingredients and health claims are shown in the following Table 1:

///

///

///

///

15

Table 1:  Products

| Product | Sugar Content (g) | Serving Size (oz) |
|---|---|---|
| SunnyD Lemonade | 13 g | 8 oz |
| SunnyD Smooth & Sweet | 14 g | 8 oz |
| SunnyD Orange Strawberry | 14 g | 8 oz |
| SunnyD Orange Pineapple | 14 g | 8 oz |
| SunnyD Orange Mango | 14 g | 8 oz |
| SunnyD Cherry Limeade | 14 g | 8 oz |
| SunnyD Orange Carrot | 14 g | 8 oz |
| SunnyD Strawberry Guava | 14 g | 8 oz |
| SunnyD Fruit Punch | 15 g | 8 oz |
| SunnyD Orange Passionfruit | 15 g | 8 oz |
| SunnyD Green Apple | 27 g | 16 oz |
| SunnyD Blue Raspberry | 27 g | 16 oz |
| SunnyD Watermelon | 28 g | 16 oz |

**C.    Competitors Label Their Products Lawfully.**

123.    Defendant not only deceives consumers but also gains an unfair commercial advantage in the marketplace by labeling the Products deceptively.

124.    Manufacturers of competing juice beverage products label their products lawfully.

125.    Other manufacturers of artificially-flavored products accurately label their artificially-flavored juice beverage products as "Artificially Flavored."

126.    Other competing manufacturers, offering products whose labels suggest just as Defendant's do that their products are naturally flavored, truly are made only with

16

natural ingredients.

127.   Defendant, however, conceals their use of artificial flavoring, deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace, hurting their competitors and the marketplace as well as consumers.

128.   Defendant's conduct injures competing manufacturers that do not engage in the same illegal behavior.

129.   These manufacturers compete for market share and limited shelf space, as well as for consumers' dollars. Defendant's competitors do so lawfully. Defendant does not.

**D.    Plaintiffs' Purchases of the Misbranded Products**

130.   Plaintiffs purchased several varieties of the Products, relying on Product labeling that claimed the Products contained the fruits or fruit juices shown on the labels.

131.   Plaintiffs purchased the Products in California multiple times during the Class Period as defined herein.

132.   Plaintiff Michele Hunt purchased the Products at various locations during the Class Period, including the Smart & Final at 39212 10th Street West, Palmdale, California, Vons at 3027 Rancho Vista Blvd, Palmdale, California, and the Walmart Store at 40130 10th Street West, Palmdale, California.

133.   Plaintiff Michele Hunt purchased the Products most recently in November 2017 at the marked retail prices, typically ranging from $3.00 to $4.50 for a single 128-oz (1 gallon) plastic bottle, and from time to time in multiple packs at higher prices.

134.   Plaintiff Malika Jones purchased the Products at various locations during the Class Period, most recently in late November 2017 at the Superior Grocers Store at 3480 S. La Brea Avenue, Los Angeles, California.

135.   Plaintiff Malika Jones purchased the Products at the marked retail prices, typically $3.99 for a single 64-oz plastic bottle.

136.   Plaintiffs first discovered Defendant's unlawful conduct described herein in

17

March 2018, when they learned the Products' characterizing flavors were deceptively simulated using artificial flavoring even though Defendant failed to disclose that fact on the Products' labels.

137. Plaintiffs relied upon and were deceived by the Products' deceptive labeling.

138. Plaintiffs were specifically deceived by Defendant's omission of the fact that the Products contained artificial flavorings. Plaintiff purchased the Products believing they were naturally-flavored, based on the Products' deceptive labeling and failure to disclose the artificial flavoring.

139. Plaintiffs, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that the product's front label is false and misleading, or to search the label for information that state law requires be displayed prominently on the front—and, in fact, under state law is entitled to rely on the statements that Defendant deliberately placed on the product's labels.

140. Defendant, but not Plaintiffs, knew or should have known that this labeling was false and in violation of federal regulations and state law.

141. Plaintiffs, and the putative Class they intend to represent, paid a price premium for the Products because of the Products' false advertising.

142. Because Plaintiffs reasonably assumed the Products to be free of artificial flavoring, based on the Products' labels, when they were not, they did not receive the benefit of their purchases. Instead of receiving the benefit of products free of artificial flavoring, they received a Product that was unlawfully labeled to deceive the consumer into believing that it was exclusively flavored with the natural fruits shown on the label and contained no artificial flavoring.

143. Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions. Had Defendant not violated California law, Plaintiffs would not have been injured.

144. As described above, products perceived by the consumer as natural sell at a

premium price compared to synthetic or artificially-flavored products.

145.   The Products were worth less than what Plaintiffs paid for them and Class members would not have paid as much as they have for the Products absent Defendant's false and misleading statements and omissions.

146.   Plaintiffs lost money because of Defendant's unlawful behavior. Plaintiffs altered their position to their detriment and suffered loss in an amount equal to the price premium they paid for the Products as falsely labeled and advertised.

147.   Plaintiffs intend to, desire to, and will purchase the Products again when they can do so with the assurance that Products' labels, which indicate that the Products are lawful and are labeled lawfully consistent with the Products' ingredients.

## V.   **DELAYED DISCOVERY**

148.   Plaintiffs did not discover that Defendant's labeling of the Products was false and misleading until March 2018, when they learned the Products contained but were not lawfully labeled to disclose the artificial flavoring or the absence of natural fruit(s).

149.   Plaintiffs are reasonably diligent consumers who exercised reasonable diligence in their purchase and consumption of the Products. Nevertheless, they would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they relied on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendant's labeling practices and non-disclosures—in particular, failing to correctly identify the artificial flavor in the ingredient list, or to disclose on the front labels that the Products contained either natural or artificial flavoring, or to accurately identify the kind of malic acid that Defendant puts in the Products—impeded Plaintiffs and the Class members' ability to discover the deceptive and unlawful labeling of the Products throughout the Class Period.

150.   Because Defendant actively concealed their illegal conduct, preventing Plaintiffs and the Class from discovering their violations of state law, Plaintiffs and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable

statute of limitations.

## VI.   **THE PRODUCTS**

151.   Defendant manufactures and distributes several varieties of "SunnyD" products that unlawfully contain artificial flavors undisclosed on the Products' front labels and fail to disclose that they contain none or not all of the natural fruit juice(s) pictured on the label.

152.   The Products included herein include:

| SunnyD Smooth & Sweet | SunnyD Green Apple |
|---|---|
| SunnyD Orange Strawberry | SunnyD Blue Raspberry |
| SunnyD Orange Pineapple | SunnyD Strawberry Guava |
| SunnyD Orange Mango | SunnyD Lemonade |
| SunnyD Fruit Punch | SunnyD Cherry Limeade |
| SunnyD Orange Passionfruit | SunnyD Watermelon |
| SunnyD Orange Carrot | |

153.   Each of the Products identified above are substantially similar to the Products that were purchased by Plaintiffs in that each of the above Products fail to adequately disclose artificial flavoring ingredients.

154.   During the Class Period, Class members purchased one or more of the Products and incurred the same injuries as alleged herein for Plaintiffs' purchases of the Products.

155.   The legal violations, false advertising, and consumer and market injuries resulting from Defendant's false, misleading, and unlawful advertising, marketing, and labeling of all the Products are sufficiently similar to make it reasonable to include Class members' purchases of all the Products in this Class Action.

156.   Class members' purchases of all these Products are therefore included herein.

///

# VII.   CLASS ACTION ALLEGATIONS

157.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek certification of the following Class as defined as follows:

> All persons in California who purchased the Sunny Delight Products for personal and household use and not for resale on or after January 1, 2012 until the date notice is disseminated in this action.

158.   The Class described in this complaint will jointly be referred to as the "Class" or the unless otherwise states, and the proposed members of the Class will jointly be referred to as "Class members."

159.   Plaintiffs and the Class reserve their right to amend or modify the Class definition with greater specificity or further division into Subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

160.   Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

161.   During the Class Period, the Products unlawfully contained the undisclosed artificial flavors d-malic acid or dl-malic acid and failed to disclose on the front labels that the Products were artificially and naturally flavored, did not contain each of the fruit(s) or fruit juice(s) advertised on the labels, and were otherwise improperly labeled. Defendant failed to label the Products as required by California law.

162.   The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation; there is a well-defined community of interest in questions of law and fact common to the Class.

163.   The proposed Class satisfies numerosity. The Products are offered for sale at thousands of grocers, drug stores, and large chain retail stores across the United States, the Class numbers at minimum in the tens of thousands. Individual joinder of the Class

members in this action is impractical. Addressing the Class members' claims through this class action will benefit Class members, the parties, and the courts.

164. The proposed Class satisfies typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the Class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result.

165. The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Product's retail purchase price which is generally under $5.00. It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims.

166. Because Defendant's misrepresentations were made on the labels of the Product itself, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations.

167. The proposed Class representatives satisfy adequacy of representation. The Plaintiffs are adequate representatives of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests antagonistic to those of other Class members. Plaintiffs have retained counsel competent in the prosecution of consumer fraud and class action litigation.

168. There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

169. Questions of law and fact common to Plaintiff and the Class include:

    a.    Whether Defendant failed to adequately disclose on Product front labels the presence of artificial flavors in the Products;

    b.    Whether Defendant misleadingly labeled the Products as if they contained natural fruits or fruit juices;

    c.    Whether Defendant failed to properly disclose the artificial

ingredient dl-malic acid in the Products;

d.    Whether Defendant's Products contain sufficient added sugar to contribute substantially to the excessive consumption of added sugar;

e.    Whether the excessive consumption of added sugar presents significant health risks;

f.    Whether Defendant's use of health claims on the packaging of high-sugar Products is misleading to the reasonable consumer;

g.    Whether Defendant's labeling omissions and representations constituted false advertising under California law;

h.    Whether Defendant's conduct constituted a violation of California's Consumer Legal Remedies Act;

i.    Whether Defendant's conduct constituted a violation of California's Unfair Competition Law;

j.    Whether Defendant's conduct constituted a violation of California's False Advertising Law;

k.    Whether Defendant's front label statement of contents, for example, "Orange Strawberry," was an affirmative representation of the Product's composition creating an express warranty;

l.    Whether Defendant's conduct constitutes a breach of implied warranties under California's Commercial Code;

m.    Whether Defendant's conduct violates California's Sherman Law or U.S. Food and Drug Administration labeling regulations incorporated by reference;

n.    Whether the statute of limitations should be tolled on behalf of the Class due to Defendant's deceptive conduct;

o.    Whether the Class is entitled to restitution, actual damages,

23

1    punitive damages, attorney fees and costs of suit, and injunctive

2    relief; and

3    p.    Whether members of the Class are entitled to any such further

4    relief as the Court deems appropriate.

5    170.  Plaintiffs will fairly and adequately protect the interests of the Class, have no

6    interests that are incompatible with the interests of the Class, and have retained counsel

7    competent and experienced in class litigation.

8    171.  Class members lost money as a result of Defendant's unlawful behavior.

9    Class members altered their position to their detriment and suffered loss in an amount

10    equal to the price premium they paid for the Products as falsely labeled and advertised.

11    172.  Further, Defendant has acted on grounds applicable to the entire Class,

12    making final injunctive relief or declaratory relief appropriate for the Class as a whole.

13    173.  Class treatment is therefore appropriate for this Action.

## VIII.   CAUSES OF ACTION

## I.

## CLAIM FOR FRAUD BY OMISSION

### Cal. Civ. Code §§ 1709-1710

18    174.  Plaintiffs re-allege and incorporate by reference the allegations made

19    elsewhere in the Complaint as if set forth in full herein.

20    175.  Defendants actively concealed material facts, in whole or in part, with the

21    intent to induce Plaintiffs and the members of the Class to purchase the Products.

22    Specifically, Defendants actively concealed the truth about the Products by not disclosing

23    the existence of artificial flavoring ingredients on the front label of the Products as is

24    required by California and federal law.

25    176.  Plaintiffs and the Class were unaware of these omitted material facts and

26    would not have purchased the Products, or would have paid less for the Products, if they

27    had known of the concealed facts.

28    177.  Plaintiffs and the Class suffered injuries that were proximately caused by

Defendant's active concealments and omissions of material facts.

178.   Defendants' fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiffs and the Class members as they would not have purchased the products at all if all material facts were properly disclosed.

## II.

## CLAIM FOR NEGLIGENT MISREPRESENTATION

### Cal. Civ. Code §§ 1709-1710

179.   Plaintiffs re-allege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

180.   Defendants had a duty to disclose to Plaintiffs and the Class members the existence of artificial flavoring ingredients on the front labels of the Products pursuant to California and federal law. Defendants were in a superior position than Plaintiffs and the Class members such that reliance by Plaintiffs and the Class members was justified. Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

181.   During the applicable Class period, Defendants negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the products, including the existence of artificial flavoring ingredients.

182.   Defendants were careless in ascertaining the truth of their representations in that they knew or should have known that Plaintiffs and the Class members would not have realized the true existence of artificial flavoring ingredients in the Products.

183.   Plaintiffs and the Class members were unaware of the falsity of Defendants' misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

184.   Plaintiffs and the Class members would not have purchased the Products, or would have paid less for the Products, if the true facts had been known.

///

///

## III.

## CLAIM FOR VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT

### CAL. CIV. CODE §§ 1750, *et seq.*

185.   Plaintiffs re-allege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

186.   The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA") prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

187.   Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code § 1761(d). The Products are a "good" as defined by Cal. Civ. Code § 1761.

188.   Defendants' failure to label the Products in compliance with federal and state labeling regulations, was an unfair, deceptive, unlawful, and unconscionable commercial practice.

189.   Defendants' conduct violates the CLRA, including but not limited to, the following provisions:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

190.   As a result of Defendants' violations, Plaintiff and the Class suffered ascertainable losses in the form of the price premiums they paid for the deceptively labeled and marketed Products, which they would not have paid had these Products been labeled truthfully, and in the form of the reduced value of the Products purchased compared to the Products as labeled and advertised.

191.   On or about March 23, 2018, prior to filing this action, Plaintiffs sent a CLRA

notice letter to Defendants which complies with California Civil Code § 1782(a). Plaintiffs sent Defendants, individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' March 23, 2018 CLRA letter is attached hereto as Exhibit 1.

192.   Wherefore, Plaintiffs seek injunctive relief for Defendants' violations of the CLRA.  If Defendants fail to take the corrective action detailed in Plaintiffs' CLRA letter within thirty days of the date of the letter, then Plaintiffs will seek leave to amend their complaint to add a claim for damages under the CLRA.

**IV.**

**CLAIM FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW**
**(UNLAWFUL PRONG)**

**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***

193.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

194.   Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.  Section 17200 specifically prohibits any "unlawful . . . business act or practice."

195.   The UCL borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

196.   Defendants' practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

197.   Among other violations, Defendants' conduct in unlawfully packaging and labeling and distributing the Product in commerce in California violated U.S. FDA and California packaging and labeling regulations.

198.   The Products' front labels fail to disclose that they contain synthetic artificial flavoring and are not flavored with and do not contain any or all of the natural fruits shown on the labels, in violation of 21 C.F.R. § 101.22 and California's Sherman Law.

199.   The "Orange Strawberry" Product, for example, contains the synthetic dl-malic acid flavoring ingredient and contains no strawberry or strawberry juice

200.   The dl-malic acid is a synthetic flavoring material which creates, simulates, or reinforces the characterizing "Orange Strawberry" flavor of the Product.

201.   The dl-malic acid in the "Orange Strawberry" Product is not derived from any natural material as defined in the applicable state regulations and is therefore, by law, an artificial flavoring.

202.   Defendants fail to inform consumers of the presence of artificial flavors in the Products on the front label as required by law.

203.   Defendants' packaging, labeling, advertising, and marketing of high-sugar juice beverages with pictorial representations of natural fruits in order to give consumers the impression that they are buying an all-natural product instead of a product that contains artificial flavors and large amounts of added sugar is likely to deceive reasonable consumers.

204.   Defendants' conduct further violates other applicable California and federal regulations as alleged herein.

205.   Defendants' practices are therefore unlawful under Section 17200 *et seq*. of the California Civil Code.

## V.

## CLAIM FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW (UNFAIR PRONG)

### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

206.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

207.   Section 17200 of the California Business & Professions Code ("Unfair

28

Competition Law" or "UCL") prohibits any "unfair . . . business act or practice." Defendant's practices violate the Unfair Competition Law "unfair" prong as well.

208.   Defendants' practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendants does not outweigh the gravity of the harm to consumers.

209.   While Defendants' decision to label the Products deceptively and in violation of California law may have some utility to Defendants in that it allows Defendants to sell the Products to consumers who otherwise would not purchase an artificially-flavored food product at the premium retail price, or at all, if it were labeled correctly, and to realize higher profit margins than if they formulated or labeled the Products lawfully, this utility is small and far outweighed by the gravity of the harm inflicted on California consumers.

210.   Defendants' conduct with respect to the labeling, advertising, and sale of Defendant's high-sugar juice beverages was also unfair to consumers because it allows Defendant to sell the Products to consumers who otherwise would not purchase a product high in added sugars that contributes to excessive sugar consumption.   The consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

211.   Defendant's conduct also injures competing food product manufacturers, distributors, and sellers, that do not engage in the same unfair and unethical behavior.

212.   Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

213.   Plaintiffs' purchases and all Class members' purchases of the Products all took place in California.

214.   Defendants labeled the Products in violation of federal regulations and California law requiring truth in labeling.

215.   Defendants consciously failed to disclose material facts to Plaintiffs and the

Class in Defendant's advertising and marketing of the Products.

216.   Defendants' conduct is unconscionable because, among other reasons, it violates 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

217.   Defendants' conduct is also "unconscionable" because it violates, *inter alia*, 21 C.F.R. § 101.22, which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

218.   Defendants intended that Plaintiffs and the Class rely on Defendant's acts and omissions to induce them to purchase the Products.

219.   Had Defendants disclosed all material information regarding the Products, Plaintiffs and the Class would not have purchased the Products or would only have been willing to pay less for the Products than they did.

220.   Plaintiffs suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising:  they were denied the benefit of the bargain when they purchased the Products based on Defendants' violation of the applicable laws and regulations, and purchased the Products in favor of competitors' products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

221.   The acts, omissions, and practices of Defendants detailed herein proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, the price premium of monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

222.   Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive,

1  untrue and misleading advertising in violation of California Business & Professions Code
2  § 17200.

3       223.   Pursuant to California Business & Professions Code § 17203, Plaintiffs seek
4  an order requiring Defendants to immediately cease such acts of unlawful, unfair, and
5  fraudulent business practices and requiring Defendants to return to the Class the amount
6  of money improperly collected.

7                                          **VI.**

8         **CLAIM FOR VIOLATIONS OF THE FALSE ADVERTISING LAW**
9                    **CAL. BUS. & PROF. CODE §§ 17500, *et seq.***

10      224.   Plaintiffs re-allege and incorporate by reference each and every allegation
11  contained elsewhere in this Complaint as if fully set forth herein.

12      225.   Defendant made and distributed, in California and in interstate commerce,
13  Products that unlawfully fail to disclose the presence of artificial flavoring as required by
14  federal and state food labeling regulations.

15      226.   The Products' labeling and advertising in California presents the Products as
16  if they were solely naturally-flavored and contain the natural fruit(s) shown on the labels.

17      227.   Under California's False Advertising Law ("FAL"), Business and
18  Professions Code    § 17500 *et seq.*,

19      "It is unlawful for any person, firm, corporation or association, or any employee
20      thereof with intent directly or indirectly to dispose of real or personal property . . .
21      to make or disseminate or cause to be made or disseminated before the public in
22      this state, or to make or disseminate or cause to be made or disseminated from this
23      state before the public in any state, in any newspaper or other publication, or any
24      advertising device . . .  any statement, concerning that real or personal property . . .
25      which is untrue or misleading, and which is known, or which by the exercise of
26      reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof.
27      Code § 17500.

28      228.   Defendants' labeling and advertising statements on the Products' labels and

                                             31

in advertising and marketing materials are "advertising device[s]" under the FAL.

229.   Defendants' labeling and advertising statements, which communicated to consumers that the Products contain the identified natural fruit(s) and concealed the fact that they contain synthetic artificial flavor, were untrue and misleading, and Defendant at a minimum by the exercise of reasonable care should have known those actions were false or misleading.

230.   Defendants' labeling and advertising for Products as natural fruit juice beverages which actually contain substantial amounts of added sugar is deceptive in light of the strong evidence that excessive sugar consumption greatly increases risk of chronic disease.

231.   Defendants' conduct violated California's False Advertising Law.

## VII.

## CLAIM FOR BREACH OF EXPRESS WARRANTIES

### Cal. Comm. Code § 2313

232.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

233.   The Products' front label representations misleadingly suggest that the Products are flavored only with natural fruits such as oranges, strawberries, pineapples, and watermelons, and contain no artificial flavors.

234.   Defendant's front label statement of contents, for example, "Orange Strawberry", was an affirmative representation of the Product's composition creating an express warranty.

235.   These promises became part of the basis of the bargain between the parties and thus constituted an express warranty, which Defendant breached:  the Products are artificially flavored.

236.   Defendant sold the goods to Plaintiffs and the other Class members who bought the goods from Defendant.

237.   Plaintiffs and the Class did not receive goods as warranted by Defendant.

238.   Within a reasonable amount of time after Plaintiffs discovered that the Products contained synthetic flavorings, Plaintiffs notified Defendant of such breach.

239.   As a proximate result of this breach of warranty by Defendant, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

# VIII.

## CLAIM FOR BREACH OF IMPLIED WARRANTIES

### CAL. COMM. CODE § 2314

240.   Plaintiffs re-allege and incorporate the allegations made elsewhere in the Complaint as if set forth in full herein.

241.   Defendant's label representations also created implied warranties that the product was suitable for a particular purpose, specifically as an exclusively naturally-flavored food product containing the advertised fruit juice(s). Defendant breached this warranty.

242.   The Products' front labels misleadingly imply that they are flavored only with the natural ingredients comprising the characterizing flavors.

243.   The Products also made representations that the products are natural and healthy and not filled with added sugars.

244.   As alleged in detail above, at the time of purchase Defendant had reason to know that Plaintiffs, as well as all members of the Class, intended to use the Products as naturally-flavored food products.

245.   This became part of the basis of the bargain between the parties.

246.   Based on that implied warranty, Defendant sold the goods to Plaintiffs and other Class members who bought the goods from Defendant.

247.   At the time of purchase, Defendant knew or had reason to know that Plaintiffs and the Class members were relying on Defendant's skill and judgment to select or furnish a product that was suitable for this particular purpose, and Plaintiffs and the Class justifiably relied on Defendant's skill and judgment.

248.   The Products were not suitable for this purpose.

249.    Plaintiffs purchased the Products believing they had the qualities Plaintiffs sought, based on the deceptive advertising and labeling, but the Products were actually unsatisfactory to Plaintiff for the reasons described herein.

250.    The Products were not merchantable in California, as they were not of the same quality as other products in the category generally acceptable in the trade.

251.    The Products would not pass without objection in the trade when packaged with the existing labels, because the Products were misbranded and illegal to sell in California.  Cal. Comm. Code 2314(2)(a).

252.    The Products also were not acceptable commercially and breached the implied warranty because they were not adequately packaged and labeled as required. Cal. Comm. Code 2314(2)(e).

253.    The Products also were not acceptable commercially and breached the implied warranty because they did not conform to the promises or affirmations of fact made on the container or label, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

254.    By offering the Products for sale and distributing the Products in California, Defendant also warranted that the Products were not misbranded and were legal to purchase in California. Because the Products were misbranded in several regards and were therefore illegal to sell or offer for sale in California, Defendant breached this warranty as well.

255.    As a result of this breach, Plaintiffs and the other California consumers in the Class did not receive goods as impliedly warranted by Defendant.

256.    Within a reasonable amount of time after the Plaintiffs discovered that the Products breached these warranties, Plaintiffs notified Defendant of such breach.

257.    As a proximate result of this breach of warranty, Plaintiffs and other California consumers have been damaged in an amount to be determined at trial.

258.    As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds

by which Defendant was unjustly enriched.

## IX.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated in California, and the general public, pray for judgment against Defendant as follows:

A.   An order confirming that this action is properly maintainable as a class action as defined above;

B.   An order appointing Plaintiffs as class representatives and The Law Office of Ronald A. Marron as counsel for the Class;

C.   An order requiring Defendant to bear the cost of Class notice;

D.   An order declaring that the conduct complained of herein violates the CLRA;

E.   An order declaring that the conduct complained of herein violates the UCL;

F.   An order declaring that the conduct complained of herein violates the FAL;

G.   An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

H.   An order requiring Defendant to disgorge any benefits received from Plaintiffs and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Products;

I.   An order requiring Defendant to pay restitution and damages to Plaintiffs and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

J.   An award of punitive damages in an amount to be proven at trial;

K.   An order enjoining Defendant's deceptive and unfair practices;

L.   An order requiring Defendant to conduct corrective advertising;

M.   An award of pre-judgment and post-judgment interest;

N.   An award of attorney fees and costs; and

O.   Such other and further relief as this Court may deem just, equitable, or proper.

///
///

## X.    JURY DEMAND

Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a jury trial for claims sounding in equity.


DATED: April 2, 2018                    Respectfully Submitted,



*/s/ Ronald A. Marron*
Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron
*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Fax: (619) 564-6665
***Counsel for Plaintiffs and the Proposed Class***

*Michele Hunt, et al. v. Sunny Delight Beverages, Co.*
CLASS ACTION COMPLAINT